UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**AQUENT LLC,**

        **Plaintiff,**

v.                                                Case No: 6:13-cv-1889-Orl-28DAB

**MARY STAPLETON,**

        **Defendant.**

_____

## ORDER AND PRELIMINARY INJUNCTION

Plaintiff, Aquent LLC, moves (Doc. 5) for a preliminary injunction against Defendant, Mary Stapleton, under the Florida Uniform Trade Secrets Act (FUTSA).[1] Ms. Stapleton is a former employee of Aquent who was not subject to a non-compete or non-solicitation agreement. Aquent alleges that she has utilized or will utilize Aquent's trade secrets in her new employment with a competitive company, iTalent. (Compl., Doc. 1, ¶ 92). The Court held a hearing on the motion on January 3, 2014 and found that Aquent had shown justification for entry of a preliminary injunction but that questions remained as to its appropriate scope. (See Doc. 33). Aquent's motion and Ms. Stapleton's Response (Doc. 27), as well as both parties' arguments in the hearing, supplemental briefs, and proposed injunctions (see Docs. 34 & 35) having been considered, Aquent's Motion for a Preliminary Injunction is granted on the terms set forth in this Order.

---

[1] § 688.001-.009, Fla. Stat. (2013).

I.  **Background**

"Aquent is a global staffing firm" that "helps its corporate clients ('Clients') find specialized temporary and permanent staffing for high-end marketing positions, creative positions, and web experts." (Doc. 1 ¶ 2). Aquent staffs its individual consultants ("Talent") to work with its Clients in various marketing positions. (Id.). Aquent has an internal division called "Vitamin T" which "caters to Aquent's smaller and mid-sized clients." (Doc. 35 at 3). To maintain its business relationships, "Aquent expends substantial time, effort, and expense" developing and maintaining information about Clients and Talent, including order history, pricing and mark-up information, personal data, and pending projects and proposals. (Doc. 1 ¶¶ 23-24). Aquent stores this information on a secure database that requires confidential usernames for access by staff. (Id. ¶¶ 25, 27).

Ms. Stapleton worked for Aquent from 2005 until September 2013, after she voluntarily resigned. (Id. ¶ 5; see also Def.'s Aff., Doc. 27-1). At the end of her employment, Ms. Stapleton was serving as the Vice President and Managing Director of Media, Entertainment, Travel and Hospitality ("the Media group"). (Doc. 1 ¶ 4; Doc. 27-1 ¶ 4). In this role, she was "responsible for Aquent's staffing in these industries nationwide." (Doc. 1 ¶ 4). In addition to her focus on these industries, she was also responsible "for the Florida market generally" during most of her time at Aquent. (Doc. 35 at 3). Upon leaving Aquent, Ms. Stapleton began working for iTalent, which Aquent alleges is one of its competitors. (Doc. 1 ¶ 6; see also Doc. 27-1). According to Aquent, Ms. Stapleton downloaded vast amounts of information from its database while she was

still employed at Aquent for use at iTalent,[2] contrary to a confidentiality agreement between Ms. Stapleton and Aquent. (Doc. 1 ¶¶ 8, 29). Ms. Stapleton acknowledges that she did download information but maintains that she has either destroyed or returned all of the information to Aquent. (Doc. 27-1 ¶¶ 16, 18). She further maintains that she did not disclose or retain any of Aquent's trade secrets or confidential information. (Id. ¶¶ 19-20). Aquent sued Ms. Stapleton, bringing several counts, including the FUTSA claim under which Aquent now seeks a preliminary injunction.

## II. Analysis

"[T]he four factors to be considered in determining whether temporary restraining or preliminary injunctive relief is to be granted . . . are whether the movant has established: (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest." Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1223, 1225-26 (11th Cir. 2005).

Here, Aquent has shown that it has a substantial likelihood of prevailing on the merits. To establish a claim under FUTSA, the plaintiff must show that "(1) the plaintiff possessed secret information and took reasonable steps to protect its secrecy, and (2) the secret it possessed was misappropriated, either by one who knew or had reason to know that the secret was improperly obtained or by one who used improper means to obtain it." All Leisure Holidays Ltd. v. Novello, No. 12-62328-CIV, 2012 WL 5932364, at *4 (S.D. Fla. Nov. 27, 2012). FUTSA defines a trade secret as "information" that "[d]erives independent economic value, actual or potential, from not being generally known to, and

---

[2] Aquent has submitted several declarations from Mankin Yuen, a digital forensic examiner, which support these allegations. (See, e.g., Doc. 35-1).

not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use" and "[i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy." § 688.002(4), Fla. Stat. (2013).

Ms. Stapleton admits that she downloaded some information that constitutes a trade secret. (See Doc. 27 at 6 ("[N]ot all of the . . . information [on the Aquent database] is a trade secret . . . ." (emphasis added)).  She argues, however, that any client lists she obtained are not trade secrets, stating that if the information in question is "readily ascertainable to the public" and "not the product of any great expense or effort,"[3] it is not a trade secret. (Id. at 7 (quotation omitted)).  Aquent has established that the information is valuable, that Aquent takes substantial precautions to protect this information from becoming public, and that Aquent has expended large amounts of resources to produce the information Ms. Stapleton downloaded. (See Jennifer Horton Decl., Doc. 7).  Other than her demand, Ms. Stapleton has provided no evidence that this information was publicly available or that Aquent did not invest resources in compiling it.  She provides only a statement in her affidavit that she is able to access some client information on the social networking website LinkedIn, which is not unique to Aquent. (Doc. 27-1 ¶¶ 13, 14).  Viewed with Aquent's substantial, uncontested evidence regarding the vast amount of information Ms. Stapleton downloaded and the subsequent spoliation of some evidence, her argument is not compelling.  Thus, Aquent has shown that the information Ms. Stapleton acquired is likely to be trade secrets.

---

[3] Florida courts have found customer lists to be trade secrets when they were "compiled at great time and expense." Mittenzwei v. Indus. Waste Serv., Inc., 618 So. 2d 328, 329 (Fla. 3d DCA 1993). "[A] former employee may not use for her own advantage customer lists obtained in confidence or containing trade secrets." Id.

Ms. Stapleton also argues that Aquent failed to show that she utilized or misappropriated the trade secrets. (Doc. 27 at 7-8). However, for the purposes of this injunction, Aquent has satisfactorily made that showing. Aquent has submitted declarations indicating that its information has been accessed from iTalent computers. (See Mankin Yuen Decl., Doc. 35-3, ¶ 5). In addition, Ms. Stapleton has admitted to spoliation of the evidence. In response to Aquent's demand that information be returned, Ms. Stapleton directed her husband to destroy the four thumb drives containing the requested data. (Def.'s Aff., Doc. 27-1, ¶ 18; Peter Stapleton Aff., Doc. 27-2). The Court infers from this spoliation that actual or threatened misappropriation occurred. § 688.003(1), Fla. Stat. (2013) ("Actual or threatened misappropriation may be enjoined."). Aquent has thus shown that it has a substantial likelihood of success on the merits of its FUTSA claim.

Aquent has also sufficiently established that it will suffer irreparable injury if a preliminary injunction is not entered. Under Florida law, "irreparable harm and inadequate remedy at law should be presumed in an action for injunctive relief with respect to the misappropriation of a trade secret." Dotolo v. Schouten, 426 So. 2d 1013, 1015 (Fla. 2d DCA 1983); see also All Leisure Holidays, 2012 WL 5932364, at *5. The only argument made by Ms. Stapleton on this point is that Aquent has not cited to a specific harm that has occurred from the use of trade secrets. (Doc. 27 at 13). Ms. Stapleton cites to Clark v. Merrill Lynch for the proposition that a movant has to cite specific instances of usage of client lists for there to be a presumption of irreparable harm. (Id. (citing Clark v. Merrill Lynch, No. 95-808-CIV-T-17C, 1995 WL 17909500, at *5 (M.D. Fla. June 15, 1995)). By establishing that the misappropriated information was accessed on iTalent computers, Aquent has satisfied this requirement. (Doc. 35-3 ¶ 5).

5

This threatened injury to Aquent outweighs the harm that a preliminary injunction may inflict on Ms. Stapleton. Aquent faces substantial harm if its trade secrets are misappropriated. On the other hand, the injunction against Ms. Stapleton will be relatively narrow and for a short duration, and it will serve to protect Aquent from any illegal use of its trade secrets. The granting of this preliminary injunction will also serve the public interest. Florida policy favors the protection of businesses and their trade secrets. Hatfield v. AutoNation, Inc., 939 So. 2d 155, 158 (Fla. 4th DCA 2006) ("[T]he existence of Florida's trade secret statute illustrates our state's interest in protecting businesses from theft of confidential information.").

Aquent is entitled to the entry of a preliminary injunction, but its requested relief is too broad. In addition to an injunction from accessing or misappropriating trade secrets, Aquent requests that Ms. Stapleton be prohibited from contacting any Aquent Clients or Talent for one year. Alternatively, Aquent requests that Ms. Stapleton be enjoined from contacting or soliciting: (a) any Vitamin T Clients or Talent; (b) any Aquent Clients or Talent located in Florida; (c) any Aquent Clients or Talent within the Media group; (d) any Aquent Clients or Talent that are specifically identified by name in the file paths of files Ms. Stapleton downloaded from Aquent's database; and (e) any Aquent Clients or Talent located in a geographic market specifically identified in the file paths of the files downloaded by Ms. Stapleton. (Doc. 35 at 3-4).

Aquent's proposed injunction is overbroad regarding the Aquent Clients and Talent located in Florida and those in the Media group. As admitted by Aquent, Ms. Stapleton's work was focused on the Florida market and the Media group. (Id.). Ms. Stapleton likely knows much of the information about clients, including pricing, in these categories without the need for any misappropriated information (see Doc. 34 at 3, 6-9), and the Court should

6

not forbid her from using her contacts and expertise without a non-compete agreement.[4] Templeton v. Creative Loafing Tampa, Inc., 552 So. 2d 288, 290 (Fla. 2d DCA 1989) ("[A former employee] cannot be precluded from utilizing contacts and expertise gained during his former employment, or even customer lists he himself developed." (citations omitted)); see also Mittenzwei v. Indus. Waste Serv., Inc., 618 So. 2d 328, 329-30 (Fla. 3d DCA 1993) (noting that while customer lists "compiled at great time and expense" could be considered trade secrets, an injunction is improper if it prevents a former employee from "utiliz[ing] the relationships she developed over the years"). Furthermore, the Court finds that a year is unnecessarily lengthy for such an injunction and instead grants the injunction against contact or solicitation for a four-month period.

Aquent's proposed injunction is not overbroad with regard to information relating to Clients or Talent within Vitamin T or located outside of Florida. It is undisputed that Ms. Stapleton has not worked closely with those clients since early 2011, though she allegedly downloaded information about them. (See Doc. 35 at 3; Mankin Yuen Decls., Doc. 35-1, at 4 & Doc. 35-3 at 2-3). If Ms. Stapleton contacts these clients, she is much less likely to merely be using the expertise she gained during her time at Aquent and is instead likely to be misappropriating Aquent's trade secrets.

Accordingly, it is HEREBY ORDERED AND ADJUDGED as follows:

1. Plaintiff Aquent LLC's Motion for Preliminary Injunction (Doc. 5) is **GRANTED**.[5]

---

[4] Notably, while the preliminary injunction does not prevent Ms. Stapleton from using the contacts and expertise she gained during her time at Aquent, it does prevent her from accessing or otherwise misappropriating any information she downloaded from Aquent's database. Though she may contact clients from the Media Group, for example, she may not access any information she improperly downloaded from Aquent's databases about those clients.

[5] The motion (Doc. 5) was previously denied to the extent it sought an ex parte temporary restraining order. (See Order, Doc. 13).

2. Mary Stapleton, as well as any persons in active concert or participation with her who receive actual notice of this Order by personal service or otherwise, are enjoined from, directly or indirectly:

   a. Misappropriating or threatening to misappropriate, accessing, using, disclosing, copying, or revealing any Aquent trade secret or proprietary business or confidential information (including without limitation, any information downloaded from Aquent's database and/or systems pertaining to Aquent's Clients or Talent); and

   b. For four months from the date of this Order, contacting, communicating with, soliciting, attempting to solicit, transacting business with, and/or performing work on behalf of:

      i. Any Aquent "Vitamin T" Clients or Talent; and

      ii. Any other Aquent Clients or Talent, except those located in Florida or that fall within Aquent's Media, Entertainment, Travel, and Hospitality group.

Within ten days of entry of this Order, Aquent shall provide to Ms. Stapleton, pursuant to a mutually agreed upon protective order, the identities of any Clients and Talent that, pursuant to this order, Ms. Stapleton is prohibited from contacting, communicating with, soliciting, attempting to solicit, transacting business with, and/or performing work for.

Ms. Stapleton, along with her respective agents, employers, employees, attorneys, and those persons in active concert or participation with her who receive actual notice of this Order by personal service or otherwise, are required to return to Aquent all trade secrets and confidential information in their possession or

control, including all copies thereof, and to verify in writing that she has returned all such information, or if not, accounting for any such information that cannot be returned.

**DONE** and **ORDERED** in Orlando, Florida on January 13, 2014.

                                              JOHN ANTOON II
                                              United States District Judge

Copies furnished to:

Counsel of Record