UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

AQUENT LLC,

        Plaintiff,

v.                                       Case No:  6:13-cv-1889-Orl-28DAB

MARY STAPLETON and ITALENT LLC,

        Defendants.

## ORDER

Plaintiff, Aquent LLC, brings this suit against a former employee, Defendant Mary Stapleton, and her current employer, Defendant iTalent LLC.  (Am. Compl., Doc. 66). Aquent alleges that as a Vice President for Aquent, Stapleton downloaded confidential information from its databases to use at iTalent and recruited other Aquent employees to join iTalent.  Stapleton and iTalent filed motions to dismiss under Federal Rule of Civil Procedure 12(b)(6).  (Docs. 72 & 89).  Because Aquent states claims for relief that are plausible on their face, the motions to dismiss must be denied.

I.     **Background[1]**

"Aquent is a global staffing firm" that "helps its corporate clients ('Clients') find specialized temporary and permanent staffing for high-end marketing positions, creative positions, and web experts." (Am. Compl. ¶ 2).  Aquent staffs its individual consultants ("Talent") to work with its Clients in various marketing positions.  (Id.).  To preserve its business relationships, Aquent develops and maintains information about Clients and

---

[1] The Background section contains facts as stated in the Amended Complaint and accepted as true for purposes of the motions to dismiss.

Talent, including order history, pricing and mark-up information, personal data, and pending projects and proposals. (Id. ¶¶ 27-28). Aquent stores this information on a secure database that requires confidential usernames and passwords for access by staff. (Id. ¶¶ 29, 31).

Stapleton was an employee of Aquent for approximately eight years until she resigned on September 27, 2013. (Id. ¶ 3). At the end of her employment, Stapleton was serving as the Vice President and Managing Director of Media, Entertainment, Travel and Hospitality. (Id.). Aquent alleges that Stapleton began working for iTalent, one of Aquent's competitors, two weeks before her employment with Aquent concluded. (Id. ¶ 6). While she was still employed at Aquent, Stapleton downloaded vast amounts of information from Aquent's database for use at iTalent. (Id. ¶¶ 9-11). This conduct was contrary to a confidentiality agreement between Stapleton and Aquent, and at least some of this information involved Clients with whom Stapleton had never worked. (Id. ¶¶ 30, 33, 49). She accessed this information after her employment with Aquent ended and while she worked for iTalent. (Id. ¶ 13). Aquent also alleges that Stapleton recruited two of her subordinates at Aquent to work with her at iTalent. (Id. ¶ 13, 42-43). According to Aquent, iTalent knew about duties that Stapleton owed to Aquent and assisted and encouraged her to breach those duties. (Id. ¶¶ 156-57, 163-64).

Aquent sued Stapleton and iTalent, bringing claims against Stapleton for violations of the Computer Fraud and Abuse Act[2] (Count I), violations of the Florida Uniform Trade Secrets Act[3] (Count II), unfair competition (Count III), breach of fiduciary duty (Count IV),

---

[2] 18 U.S.C. § 1030.

[3] § 688.001-.009, Fla. Stat.

and breach of the duty of loyalty (Count V). Aquent sued iTalent for aiding and abetting breach of fiduciary duty (Count VI), aiding and abetting breach of the duty of loyalty (Count VII), conversion (Count VIII), and interference with advantageous relations (Count IX). Aquent moved for a preliminary injunction against Stapleton on its trade secrets count, (Doc. 5), which the Court granted, (Doc. 37). This case is before the Court on Stapleton's motion to dismiss Counts I, IV, and V (Doc. 72) and iTalent's motion to dismiss Counts VI, VII, and IX. (Doc. 89).

## II.    Motion to Dismiss Standard

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). "'[D]etailed factual allegations'" are not required, but "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). Facial plausibility requires the plaintiff to plead facts allowing "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Twombly, 550 U.S. at 556). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. at 679.

## III.    Stapleton's Motion to Dismiss

### A.    Computer Fraud and Abuse Act

Stapleton moves to dismiss Count I, arguing that Aquent's allegations that she violated the Computer Fraud and Abuse Act (CFAA) do not state a claim because Aquent

3

does not sufficiently allege damage or loss and because Stapleton accessed the computer and data with authorization. (Doc. 72 at 2-5). The CFAA is primarily a criminal statute that provides for a civil cause of action by a plaintiff "who suffers damage or loss by reason of a violation of" the CFAA. 18 U.S.C. § 1030(g). A civil action can only be based on limited conduct, including the "loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value."[4] 18 U.S.C. § 1030(c)(4)(A)(i)(I), (g). Accordingly, in a civil action under the CFAA, a plaintiff must prove this amount of loss, plus the elements of the particular subsection of the CFAA under which the plaintiff brings suit.

In the Amended Complaint, Aquent alleges that Stapleton violated the CFAA in three ways. First, Aquent claims a violation of § 1030(a)(2)(C), which provides for liability against a defendant who "intentionally accesse[d] a computer without authorization or exceed[ed] authorized access, and thereby obtain[ed] . . . information from any protected computer." (Am. Compl. ¶ 114(A)). Next, Aquent accuses Stapleton of violating § 1030(a)(4), which requires Aquent to prove that Stapleton "knowingly and with intent to defraud[] accesse[d] a protected computer without authorization, or exceede[d] authorized access, and by means of such conduct further[ed] the intended fraud and obtain[ed] anything of value, unless the object of the fraud and the thing obtained consists only of the use of the computer and the value of such use is not more than $5,000 in any 1-year period." (Id. ¶

---

[4] Subsection 1030(g) references subsection (c)(4)(A)(i) in listing the conduct eligible for a civil suit: "A civil action for a violation of this section may be brought only if the conduct involves 1 of the factors set forth in subclauses (I), (II), (III), (IV), or (V) or subsection (c)(4)(A)(i)." This language indicates that the civil cause of action does not need to be brought under subsection (c)(4)(A)(i), but it must involve conduct enumerated in those paragraphs.

114(B)). Finally, Aquent alleges that Stapleton violated § 1030(a)(5)(C),[5] which makes it a violation for a person to "intentionally access[] a protected computer without authorization, and as a result of such conduct, cause[] damage and loss." (Id. ¶ 114(C)). The only issues in Stapleton's motion to dismiss are whether Aquent properly alleges loss or damage under the CFAA and whether Aquent properly alleges that Stapleton accessed the computers without authorization or exceeded authorized access. (Doc. 72 at 3-4).

> 1.   *Loss or Damage*

Stapleton argues that Aquent's CFAA claim should be dismissed because Aquent fails to properly allege it suffered damage or loss under the statute. (Doc. 72 at 3). As discussed above, to bring a civil action under the CFAA, a plaintiff must suffer "damage or loss" as a result of violation of the statute, and the conduct must be one of five enumerated types. 18 U.S.C. § 1030(g). The only enumerated type relevant here is that the conduct must have caused "loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value." Id. § 1030(c)(4)(A)(i)(I). Damages of this type "are limited to economic damages." Id. § 1030(g). Because of the disjunctive nature of the statute, plaintiffs suing under § 1030(a)(2)(C) and (a)(4) are not required to plead damage in addition to the required amount of loss. Under § 1030(a)(5)(C), however, plaintiffs are required to plead both damage and loss. See Trademotion, LLC v. Marketcliq, Inc., 857 F. Supp. 2d 1285, 1292 n.3 (M.D. Fla. 2012).

---

[5] Aquent actually alleges that Stapleton's conduct was in violation of § 1030(a)(5)(A)(iii), which is not found within the current statute. Aquent appears to be citing a previous version of the CFAA, which was amended in 2008 and which provided in subsection (a)(5)(A)(iii) that it was a violation to "intentionally access[] a protected computer without authorization, and as a result of such conduct, cause[] damage." Stapleton did not argue that Aquent cited an invalid section of statute. The Court reads Aquent's allegation as bringing a cause of action under subsection (a)(5)(C), which uses the same language but notably adds a requirement for the plaintiff to prove loss.

"Loss" is defined in the CFAA as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service."[6] 18 U.S.C. § 1030(e)(11). The loss of trade secrets is not considered "loss" under the CFAA. See Lockheed Martin Corp. v. Speed, No. 6:05-CV-1580-ORL-31, 2006 WL 2683058, at *3 (M.D. Fla. Aug. 1, 2006). Aquent alleges that it "suffered losses in excess of $5,000.00 in a one-year period, including, without limitation, the costs of engaging a computer forensics firm to respond to Stapleton's offenses and to analyze and assess the extent of Stapleton's wrongful taking of information from Aquent's computers, as well as her attempts to delete any trail of her misconduct." (Am. Compl. ¶ 115). This allegation is sufficient to allege loss under the civil suit provision of the CFAA.

"Damage," on the other hand, is defined in the CFAA as "any impairment to the integrity or availability of data, a program, a system, or information." 18 U.S.C. § 1030(e)(8). Aquent argues that its allegation that Stapleton deleted her laptop internet browser history meets this definition of damage. (Doc. 82 at 5-6 (quoting Am. Compl. ¶ 66)). "'The use of [the] term "integrity" in the statute requires some diminution in the

---

[6] In defining the precise scope of the definition of loss, courts in this circuit have differed as to the application of the term "because of interruption of service." Stapleton does not raise an argument that any "loss" must be related to an "interruption in service," and in any event, this Court finds that the plain language and structure of the statute support previous interpretations in this district that only allegations of "any revenue lost, cost incurred, or other consequential damages incurred" need to be related to an interruption in service. Trademotion, 857 F. Supp. 2d at 1293; Klein & Heuchan, Inc. v. Costar Realty Info., Inc., No. 8:08-cv-1227-T-30EAJ, 2009 WL 963130, at *3 (M.D. Fla. Apr. 8, 2009). Aquent's alleged loss of the cost of responding to an offense and conducting a damage assessment does not need to be connected to interruption of service to state a claim under the CFAA.

completeness or usability of data or information on a computer system.'" Trademotion, 857 F. Supp. 2d at 1292 (quoting Cheney v. IPD Analytics, L.L.C., No. 08-23188-CIV, 2009 WL 1298405, at *6 (S.D. Fla. Apr. 16, 2009), report and recommendation adopted, 2009 WL 2096236 (S.D. Fla. May 8, 2009)). As opposed to "loss," the definition of "damage" "is aimed at the impairment rendered to the computer and information therein." Speed, 2006 WL 2683058, at *7. Deletion of confidential information from a computer constitutes damage under the CFAA. See Deman Data Sys., LLC v. Schessel, No. 8:12-cv-2580-T-24 EAJ, 2013 WL 2708538, at *5 (M.D. Fla. June 11, 2013); see also Se. Mech. Servs., Inc. v. Brody, No. 8:08-CV-1151-T-30EAJ, 2008 WL 4613046, at *13-14 (M.D. Fla. Oct. 15, 2008). One judge in this district also found that "deletions intended to cover up certain of [defendants'] activities" constitute damage under the CFAA. Ryan, LLC v. Evans, No. 8:12-cv-289-T-30TBM, 2012 WL 1532492, at *6 (M.D. Fla. Mar. 20, 2012). "Impairment to the integrity or availability of data" may encompass deletion of laptop browser history.[7] Because Aquent alleges that Stapleton deleted her laptop internet browser history, it sufficiently pleads damage under the CFAA.

### 2. Authorization

The parties disagree as to the effect of Stapleton having authorization to access Aquent's computers to obtain information. According to Stapleton, she was authorized to access Aquent computers and thus Aquent's claim under the CFAA must fail. Stapleton

---

[7] At least one court has found that "deletion of files alone does not constitute 'damage' . . . if the deleted data is still available to the plaintiff through other means." Cheney, 2009 WL 1298405, at *6. Stapleton does not argue this point, and in any case, the Court finds this reasoning unpersuasive. The CFAA requires only that plaintiffs allege "impairment to the integrity or availability of data," not complete destruction of data. Aquent meets this standard of pleading impairment even though Aquent admits that its forensic firm was able to recover much of the evidence Stapleton deleted. (Am. Compl. ¶ 66).

argues that the allegation in the Amended Complaint that she "'was given access to Aquent's trade secrets and confidential information' . . . dooms [Aquent's] CFAA claim" because it makes clear that Stapleton had authorization to access the computers.  (Doc. 72 at 4 (quoting Am. Compl. ¶ 37); accord Doc. 86 at 5).  Aquent responds that Stapleton's conduct exceeded her authorization because she accessed the computers for non-business-related purposes and is thus covered by the CFAA.  (Doc. 82 at 6-9).

The CFAA does not define authorization, but it defines the term "exceeds authorized access" as "to access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter." 18 U.S.C. § 1030(e)(6).  Courts have split on the meaning of exceeding authorization under the CFAA.  Some circuits have interpreted the term narrowly, holding that the CFAA applies "only when an individual accesses a computer without permission or obtains or alters information on a computer beyond that which he is authorized to access."  WEC Carolina Energy Solutions LLC v. Miller, 687 F.3d 199, 206 (4th Cir. 2012); see also United States v. Nosal, 676 F.3d 854, 863-64 (9th Cir. 2012) ("[W]e hold that 'exceeds authorized access' in the CFAA is limited to violations of restrictions on access to information, and not restrictions on its use.").  In 2010, the Eleventh Circuit joined circuits that take a broader view, holding that when the employer had a policy limiting an employee's computer access to that done for business purposes, an employee who accessed a database for an improper purpose exceeded authorized access.  United States v. Rodriguez, 628 F.3d 1258, 1263 (11th Cir. 2010); see also United States v. Salum, 257 F. App'x 225, 230 (11th Cir. 2007); Int'l Airport Ctrs., L.L.C. v. Citrin, 440 F.3d 418, 420-21 (7th Cir. 2006); United States v. John, 597 F.3d 263, 272 (5th Cir. 2010).  Other district courts have applied the Eleventh

Circuit's broad interpretation in cases similar to this one.  See Amedisys Holding, LLC v. Interim Healthcare of Atlanta, Inc., 793 F. Supp. 2d 1302, 1315 (N.D. Ga. 2011) ("[T]here is no question that [an employee] exceeded any authority she had when she sent [documents] to herself after accepting a position at [another company] for use in competing with [the plaintiff].").[8]

Aquent concedes that Stapleton was granted authorization to access Aquent's computers and argues only that Stapleton exceeded her authorization.  (Doc. 82 at 6-9). In the Amended Complaint, Aquent alleges that Stapleton signed an offer letter from Aquent that stated she was "required to keep such information confidential during [her] employment and at all times thereafter and may use such information only within the scope of [her] duties to the company," (Am. Compl. ¶ 33); this policy is analogous to that in Rodriguez.  The Amended Complaint adequately alleges that Stapleton exceeded her authorization.

Accordingly, under Rodriguez Aquent sufficiently stated a cause of action under, and the motion to dismiss must be denied as to, 18 U.S.C. §1030(a)(2)(C) and (a)(4). Because § 1030(a)(5)(C) requires the conduct to have been done without authorization and Aquent concedes that Stapleton had authorization, Aquent fails to state a claim under § 1030(a)(5)(C).

---

[8] After Rodriguez some courts in this circuit apply a narrow definition of exceeding authorization and conclude that if a defendant has full administrative access to a computer, a claim for unauthorized access cannot be stated under the CFAA.  See Power Equip. Maint., Inc. v. AIRCO Power Servs., Inc., 953 F. Supp. 2d 1290, 1297 (S.D. Ga. 2013); cf. Trademotion, 857 F. Supp. 2d at 1291.  However, Rodriguez is not distinguishable from this case, and this Court applies a broad definition of exceeding authorized access.

## B.    Breach of Fiduciary Duty

Stapleton also argues that Count IV should be dismissed because Aquent does not sufficiently allege that Stapleton owed a fiduciary duty to Aquent. (Doc. 72 at 5).  Aquent alleges in the Amended Complaint that "[a]s the Vice President and Managing Director of Media, Entertainment, Travel and Hospitality, Stapleton was responsible for Aquent's staffing in these industries nationwide.  She led a staff of approximately 17 Agents and Account Directors who developed business from existing and new Clients."  (Am. Compl. ¶ 4).  According to Aquent, "[d]uring her employment with Aquent as a Vice President, Stapleton owed Aquent fiduciary duties to refrain from performing work for other employers, and to refrain from disclosing Aquent's confidential information, misappropriating Aquent's trade secrets for a competitor's benefit, and soliciting Aquent's customers and employees for a competing business."  (Id. ¶ 131).  Aquent alleges that "[t]hrough her actions, Stapleton breached her fiduciary and loyalty duties to Aquent as its Vice President."  (Id. ¶ 14; see also id. ¶¶ 133-40).  Stapleton argues that Delaware law, which governs this issue, provides that only managers of an LLC owe fiduciary duties and that the Amended Complaint does not allege that Stapleton was a manager of Aquent. (Doc. 72 at 5-7).  But, Aquent insists that as a Vice President and officer of Aquent Stapleton owed a fiduciary duty, that the Amended Complaint properly alleges that Stapleton was a manager of Aquent, and that Stapleton must be held to previous admissions that she owed a fiduciary duty. (Doc. 82 at 10-13).

### 1.    Choice of Law

Florida's choice-of-law provisions provide that the internal affairs of a limited liability company, such as Aquent, are governed by the laws of the state in which the company is organized. § 608.505, Fla. Stat.; see also Antaramian Props., LLC v. Basil St. Partners,

10

LC (In re: Basil Street Partners, LLC), Bankr. No. 9:11-bk-19510-FMD, Adv. No. 9:12-ap-00863-FMD, 2012 WL 6101914, at *19 (Dec. 7, 2012). Fiduciary duties are considered the internal affairs of LLCs. See Antaramian Props., 2012 WL 6101914, at *19; see also Chatlos Found., Inc. v. D'Arata, 882 So. 2d 1021, 1023 (Fla. 5th DCA 2004). Stapleton puts forth evidence that Aquent was formed in Delaware, (Ex. A to Doc. 72),[9] and Aquent does not argue to the contrary, (see Doc. 82 at 10-15). This Court will thus apply Delaware law in addressing fiduciary duties.

### 2. Fiduciary Duty

Stapleton argues that managers are considered fiduciaries in Delaware and that because the "Amended Complaint lacks the necessary facts to establish that Stapleton was a manager of Aquent," Aquent has not stated a claim for breach of fiduciary duty. (Doc. 72 at 7). This argument is not well-taken. Whether individuals are fiduciaries turns on their role within the organization as well as their title. See Phillips v. Hove, C.A. No. 3644-VCL, 2011 WL 4404034, at *24 (Del. Ch. Sept. 22, 2011) ("By taking on the role of president and asserting control over [the company's] operations, [the defendant] assumed fiduciary duties to [the company] and its members."); Triton Constr. Co. v. E. Shore Elec. Servs., Inc., Civil Action No. 3290-VCP, 2009 WL 1387115, at *10 (Del. Ch. May 18, 2009)

---

[9] In considering a motion to dismiss, courts can generally only consider "well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004). However, a "court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed. In this context, 'undisputed' means that the authenticity of the document is not challenged." Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005). This Court considers the state of incorporation of Aquent central to Aquent's claims of breach of fiduciary duty, and Aquent does not challenge the authenticity of the exhibit. Accordingly, the Court will consider the evidence regarding the state of incorporation.

(holding that an individual was not a key managerial employee of a corporation and thus had no fiduciary duties as a result of his position because the individual "did not run a division of the Company or supervise tiers of employees . . . [and] did not participate in any accounting or other financial decisions of [the company], had no input into or knowledge of the financial welfare of the Company beyond the basic communication of overall company health during the weekly meetings, did not shape the policy of the Company, or advise its CEO"); Kuroda v. SPJS Holdings, L.L.C., Civil Action No. 4030-CC, 2010 WL 925853, at *7 (Del. Ch. Mar. 16, 2010) (holding that an individual did not owe a fiduciary duty when he was a non-managing member "who had no control, power, or authority over a single investor's assets or the actions that [the company] took").

"[K]ey managerial personnel" have fiduciary duties to a corporation. Triton Constr. Co., 2009 WL 1387115, at *9. Unless altered by agreement, managers of limited liability companies "owe [fiduciary] duties to the [limited liability company] and its members and controlling members owe [fiduciary] duties to minority members." Kelly v. Blum, Civil Action No. 4516-VCP, 2010 WL 629850, at *10 (Del. Ch. Feb. 24, 2010); accord Kuroda, 2010 WL 925853, at *7; Auriga Capital Corp. v. Gatz Props., LLC, 40 A.3d 839, 856 (Del. Ch. 2012). Delaware's Limited Liability Company Act defines a manager as "a person who is named as a manager of a limited liability company in, or designated as a manager of a limited liability company pursuant to, a limited liability company agreement or similar instrument under which the limited liability company is formed." 6 Del. Code § 18-101(10).[10]

---

[10] Another provision of the Delaware Code provides in part that a manager, in addition to the definition above, is "a person, whether or not a member of a limited liability company, who . . . participates materially in the management of the limited liability

Moreover, officers and directors of a corporation also owe fiduciary duties of care and loyalty. Gantler v. Stephens, 965 A.2d 695, 708-09 (Del. 2009). Fiduciary duties apply to officers of limited liability companies. See Rosener v. Majestic Mgmt., Inc. (In re OODC, LLC), 321 B.R. 128, 142 (Bankr. D. Del. 2005). Delaware's Limited Liability Company Act does not define officers, but at least the president of a limited liability company is considered an officer who can be sued for breach of fiduciary duty.[11] Antaramian Props., 2012 WL 6101914, at *19 (applying Delaware law). In addition, Delaware courts have found that even individuals who are not officers, directors, or managers of corporations may still "undertake certain duties and obligations" as agents of a company, depending on the scope of the individual's employment. Triton Constr. Co., 2009 WL 1387115, at *10.

In alleging that Stapleton was a Vice President of Aquent who led a division and supervised employees, Aquent has sufficiently alleged that Stapleton owed a fiduciary duty for purposes of a motion to dismiss.

---

company." 6 Del. Code § 18-109(a). This statute refers to service of process on managers. In their briefings, neither party mentions this statute, though Stapleton utilizes the "participates materially" language of the statute while citing only § 18-101(10), where that language does not appear. Because it is unnecessary to reach its ultimate determination, the Court does not consider this more expansive definition in determining whether Stapleton was a manager under Delaware law.

[11] Stapleton argues that officers of limited liability companies only owe fiduciary duties if the duties of managers were delegated to them, but Stapleton does not cite authority for this argument. (Doc. 86 at 2). Indeed, some courts have held that officers of a company are liable solely by virtue of their designation as officers. See Antaramian Props., 2012 WL 6101914, at *19 ("Officers of a company owe the company the fiduciary duties of care and loyalty.").

13

3.    *Admissions*

Finally, Stapleton argues that Stapleton must be bound by her previous admission that she owes a fiduciary duty. Generally, "'a party is bound by the admissions in his pleadings.'" Cooper v. Meridian Yachts, Ltd., 575 F.3d 1151, 1177 (11th Cir. 2009) (quoting Best Canvas Prods. & Supplies, Inc. v. Ploof Truck Lines, Inc., 713 F.2d 618, 621 (11th Cir. 1983)). Under this rule, parties cannot introduce evidence to attempt to contradict a judicial admission. Id. "Judicial admissions are not conclusive, however, if the court allows the party to withdraw the admission or if the underlying pleading is amended or withdrawn." Palm Beach Int'l, Inc. v. Salkin, No. 10-60995-CIV, 2010 WL 5418995, at *6 (S.D. Fla. Dec. 23, 2010); accord Summit United Serv., LLC v. Meijer, Inc. (In re Summit United Serv., LLC), Bankr. No. 03-67061-WHD, Adv. No. 03-6247, 2005 WL 6488106, at *4 (Bankr. N.D. Ga. Sept. 19, 2005). If a pleading is amended, "the prior statement 'ceases to be a conclusive judicial admission,' but still remains competent, though controvertible, evidence." Thyssen Elevator Co. v. Drayton-Bryan Co., 106 F. Supp. 2d 1355, 1361 n.9 (S.D. Ga. 2000) (quoting United States v. GAF Corp., 928 F.2d 1253, 1259 (2d Cir. 1991)).

In her Answer to the original Complaint, Stapleton stated that she "admits she had certain fiduciary duties while employed by Aquent, but denies that she had a fiduciary duty not to compete against Aquent or solicit its customers or employees after she left employment with Aquent." (Doc. 38 ¶ 101). After Aquent amended the Complaint, Stapleton filed an Answer denying the allegations that she had a fiduciary duty. (Doc. 73 ¶¶ 130-42). Because the underlying pleading was amended, Stapleton's original admission of fiduciary duties does not bar her from now denying that she had fiduciary duties, but it may serve as evidence in the case. Because the Court does not need to

consider this admission to conclude that the Amended Complaint states a claim for breach of fiduciary duty, it does not do so.

For these reasons, Stapleton's motion to dismiss as to Count IV must be denied.

### C.     Breach of the Duty of Loyalty

For the same reasons, Stapleton also argues that Aquent's claim of breach of the duty of loyalty (Count V) must be dismissed.  (Doc. 72 at 8).  Because the breach of fiduciary duty claim was not dismissed, this argument is rejected.  And, even if the breach of fiduciary duty claim were due to be dismissed, the breach of the duty of loyalty claim would stand on its own.  Even nonmanagerial employees who do not owe general corporate fiduciary duties can undertake certain duties and obligations that entail the duty of loyalty.  See, e.g., Triton Constr. Co., 2009 WL 1387115, at *10-11 (holding that, as a matter of agency law, a nonmanagerial employee owed the duty of loyalty to a corporation and stating that "[f]iduciary duties may arise . . . when an employee acquires secret information relating to his employer's business").

For these reasons, Stapleton's motion to dismiss Count V must be denied.

## IV.     iTalent's Motion to Dismiss

### A.     Aiding and Abetting Breach of Fiduciary Duty

iTalent moves to dismiss Count VI, which charges that it aided and abetted Stapleton's breach of fiduciary duty.  (Doc. 89 at 3-5; Am. Compl. ¶¶ 152-59).  "Under Florida law, the elements of a claim for aiding and abetting breach of fiduciary duty are: (1) a fiduciary duty on the part of the primary wrongdoer; (2) a breach of this fiduciary duty; (3) knowledge of the breach by the alleged aider and abettor[;] and (4) the aider and abettor's substantial assistance or encouragement of the wrongdoing."  Razi v. Razavi, No. 5:12-CV-80-Oc-34PRL, 2012 WL 7801361, at *14 (M.D. Fla. Dec. 21, 2012); accord Hogan v.

Provident Life & Accident Ins. Co., 665 F. Supp. 2d 1273, 1287 (M.D. Fla. 2009).[12]  iTalent first argues that Count VI should be dismissed because Aquent's underlying breach of fiduciary duty claim is insufficient.  (Doc. 89 at 3-4).  As noted above, Aquent's claim of breach of fiduciary duty is sufficiently stated.

iTalent next argues that Aquent's pleading of substantial assistance is insufficient to support its aiding and abetting claim.  (Id. at 4-5).  "Substantial assistance occurs when a defendant affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the breach to occur."  Hines v. FiServ, Inc., No. 8:08-cv-2569-T-30AEP, 2010 WL 1249838, at *3 (M.D. Fla. Mar. 25, 2010) (citing Lerner v. Fleet Bank, N.A., 459 F.3d 273, 295 (2d Cir. 2006)).  In the Amended Complaint, Aquent alleges that iTalent and individuals working for iTalent gave Stapleton access to iTalent's customer management database (Am. Compl. ¶ 72), emailed her regarding jobs iTalent was trying to fill (id. ¶ 73), sent her an iTalent laptop (id. ¶ 74), asked Stapleton to perform work for iTalent (id. ¶ 77), and paid Stapleton (id. ¶ 78), even though iTalent and its employees knew that Stapleton was still working for Aquent (id. ¶¶ 77, 157).  Aquent sufficiently alleges that iTalent substantially assisted Stapleton with her alleged breach of fiduciary duty.

Accordingly, iTalent's motion to dismiss Count VI must be denied.

**B.    Aiding and Abetting Breach of Duty of Loyalty**

iTalent argues that Count VII, Aquent's claim for aiding and abetting a breach of Stapleton's duty of loyalty, is duplicative of Count VI, its claim for aiding and abetting a

---

[12] Delaware law applies to determine breach of fiduciary duty, but the parties only cite Florida law for the aiding and abetting claim.  This is correct because Florida law only requires that a company's internal affairs be governed by the laws of the state in which the company is organized.  See § 608.505, Fla. Stat.  Aquent's claims of aiding and abetting are alleged against a third party and are necessarily outside of its internal affairs; thus, Florida law governs.

breach of Stapleton's fiduciary duty. (Doc. 89 at 5-6). iTalent's argument is misplaced. As discussed above, a duty of loyalty may exist even when an employee does not owe other fiduciary duties. Moreover, the motion to dismiss the underlying claims of breach of fiduciary duty and breach of the duty of loyalty was denied.

iTalent's motion to dismiss Count VII must be denied.

### C.   Intentional Interference with Advantageous Relationships

Finally, iTalent argues that Count IX, Aquent's claim of intentional interference with an advantageous business relationship, should be dismissed because an at-will employment relationship is not a "business relationship." (Doc. 89 at 6-7). For this proposition, iTalent relies on Scelta v. Delicatessen Support Services, Inc., 57 F. Supp. 2d 1327, 1356 (M.D. Fla 1999).

Notwithstanding Scelta, the great weight of Florida authority indicates that a cause of action exists for tortious interference with an at-will employment relationship. See, e.g., Ahern v. Boeing Co., 701 F.2d 142, 144 (11th Cir. 1983) ("The Florida courts have determined that 'an action will lie where a party tortiously interferes with a contract terminable at will.'" (quoting Unistar Corp. v. Child, 415 So. 2d 733, 734 (Fla. 3d DCA 1982))); McCurdy v. Collis, 508 So. 2d 380, 383 (Fla. 1st DCA 1987); Fla. Power & Light Co. v. Fleitas, 488 So. 2d 148, 152 (Fla. 3d DCA 1986); Rudnick v. Sears, Roebuck & Co., 358 F. Supp. 2d 1201, 1205 (S.D. Fla. 2005); see also Tamiami Trail Tours, Inc. v. Cotton, 463 So. 2d 1126, 1127 (Fla. 1985). A few cases have contrary language but make clear that an at-will employment relationship is sufficient to establish a prima facie case of tortious interference and that the burden then shifts to the defendant to prove privilege of competition. See Greenberg v. Mount Sinai Med. Ctr. of Greater Miami, Inc., 629 So. 2d 252, 255 (Fla. 3d DCA 1993). In such cases, a determination about privilege should not

17

be made at the motion to dismiss stage. See id. at 256; Rosenbaum v. Becker & Poliakoff, P.A., No. 08-81004-CIV, 2010 WL 376309, at *6 (S.D. Fla. Jan. 26, 2010).

iTalent additionally argues that because "Aquent fails to allege that it had any contractual relationships with its customers that would require that the customers solely use Aquent," Count IX must be dismissed. (Doc. 89 at 7). iTalent cites no authority for this proposition. Furthermore, Aquent's intentional interference claim appears to be based on Aquent's relationship with Stapleton, not Aquent's relationship with its customers.

For these reasons, iTalent's motion to dismiss as to Count IX must be denied.

## V. Alternative Motions for Summary Judgment

Both Defendants request, in lieu of the Court granting dismissal of their claims, that the Court grant summary judgment in their favor. (Doc. 72 at 1; Doc. 89 at 1). However, Stapleton and iTalent fail to set forth a compelling argument or authority that the Court should grant summary judgment at this juncture, without the benefit of a full record. The single matter outside of the pleadings considered by this Court was central to Aquent's Amended Complaint and undisputed, and it only served to establish that Aquent is incorporated in Delaware, which is uncontested. This Court has declined to consider any other documents outside of the pleadings. "A judge need not convert a motion to dismiss into a motion for summary judgment as long as he or she does not consider matters outside the pleadings." Harper v. Lawrence Cnty., Ala., 592 F.3d 1227, 1232 (11th Cir. 2010).

Accordingly, the Defendants' alternative motions for summary judgment will be denied.

## VI.    Conclusion

Accepting the allegations in the Amended Complaint as true, Aquent states claims to relief that are plausible on their face.   Accordingly, it is hereby **ORDERED** and **ADJUDGED** that:

1.    Defendant Mary Stapleton's Motion to Dismiss Counts I, IV, and V of Plaintiff's Amended Complaint or Alternatively Motion for Summary Judgment Pursuant to Rule 56 (Doc. 72) is **DENIED**.

2.    Defendant iTalent's Motion to Dismiss Counts VI, VII, and IX of Plaintiff's Amended Complaint or Alternatively Motion for Summary Judgment Pursuant to Rule 56 (Doc. 89) is **DENIED**.

**DONE** and **ORDERED** in Orlando, Florida, on November ___, 2014.

_____
JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record
Unrepresented Parties